UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

<u>Construction Materials Recycling
Association Issues and Education
Fund, Inc., and New England
Recycling, Inc.</u>

     v.                         Civil No. 08-cv-376-JD
                                   Opinion No. 2009 DNH 011

<u>Thomas Burack, Commissioner, New
Hampshire Department of Environmental
Services, et al.</u>

O R D E R

The plaintiffs, Construction Materials Recycling Association Issues and Education Fund, Inc. ("CMRAIEF"), and New England Recycling, Inc. ("NER"), filed a three-count complaint against the defendants, Thomas Burack, Commissioner of the New Hampshire Department of Environmental Services ("DES"), and Kelly Ayotte, Attorney General of the State of New Hampshire.  The complaint challenges the constitutionality of New Hampshire legislation addressing the combustion of construction and demolition ("C & D") debris.  The plaintiffs seek declaratory and injunctive relief, damages under 42 U.S.C. § 1983, and attorney's fees and costs. Before the court is the defendants' motion to dismiss the complaint. The plaintiffs object.

<u>Standard of Review</u>[1]

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court assumes the truth of the well-pleaded facts, taking them in the light most favorable to the non-moving party.  <u>Thomas v. Rhode Island</u>, 542 F.3d 944, 948 (1st Cir. 2008).  Although a plaintiff need not provide detailed factual allegations to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955, 1964-65 (2007) (internal quotation marks and brackets omitted); <u>see also</u> <u>Erickson v. Pardus</u>, 127 S. Ct. 2197, 2200 (2007); <u>accord</u> <u>Thomas</u>, 542 F.3d at 948.  A plaintiff's allegations, therefore, must demonstrate "a plausible entitlement to relief," <u>Thomas</u>, 542 F.3d at 948 (internal quotation marks omitted), and must "give the defendant fair notice of what the claim is and the grounds upon which it rests," <u>Erickson</u>, 127 S. Ct. at 2200 (internal quotation marks and ellipsis omitted).

---

[1]The defendants fail to cite to Fed. R. Civ. P. 12(b), or any provision under 12(b) in support of their motion.  Upon reviewing their motion, however, the court agrees with the plaintiffs that the defendants contend that the complaint fails to state a claim upon which relief may be granted, pursuant to 12(b)(6).

<u>Background</u>

The following facts are taken from the plaintiffs' complaint. CMRAIEF, an Illinois corporation, is a national organization which provides education and advocacy regarding the reuse of C and D debris.  NER is a Massachusetts corporation that recycles and resells C & D debris.

Since July of 2003, a power plant in Hopkinton, New Hampshire ("Hopkinton plant") has used virgin wood and wood derived from C & D debris ("C & D fuels") to generate power.  The Hopkinton plant began relying more heavily upon C & D fuels since it cost much less than virgin wood.

In 2005, the New Hampshire legislature enacted House Bill 517, which established a committee to study C & D debris and the health effects of its disposal, and temporarily barred the incineration of C & D debris in the state ("the moratorium") until July 1, 2006.  In 2006, the legislature passed House Bill 1433 which extended the moratorium until December 31, 2007.  Each law contained an exception for municipal waste combustors and incinerators that burned C & D debris that had been operating since January of 2005.

During the 2007 legislative session, the legislature passed three laws that addressed C & D debris.  House Bill 427, codified at N.H. Rev. Stat. Ann. ("RSA") 149-M:4, IV-a, created a new definition for "construction and demolition debris," which classified it as a solid waste:

> "Construction and demolition debris" means non-putrescible waste building materials and rubble which is solid waste resulting from the construction, remodeling, repair or demolition of structures or roads.  The term includes, but is not limited to, bricks, concrete and other masonry materials, wood, wall coverings, plaster, dry wall, plumbing, fixtures, non-asbestos insulation or roofing shingles, asphaltic pavement, glass, plastics that are not sealed in a manner that conceals other wastes, and electrical wiring and components, incidental to any of the above and containing no hazardous liquid or metals. . . .

In addition, the law created a new class of waste known as "certified waste-derived product," which is defined as "a constituent of solid waste which is no longer regulated as a solid waste when certified by the department [of environmental services] to be recyclable for its original use or alternate uses . . . ."  RSA 149-M:4, II-a.  The law also prohibited the DES from certifying the wood component of C & D debris as a "certified waste-derived product" that could be combusted.  RSA 149-M:9, XIV.

House Bill 428, codified at RSA 125-C:10-c, provided, in pertinent part, that "no person shall combust the wood component of construction and demolition debris, as defined in N.H. RSA 149-M:4, IV-a, or any mixture or derivation from said component."  The law provided for certain exceptions for the "incidental combustion" of such materials by municipal incinerators and waste combustors, and exempted the "incidental combustion" of untreated wood at any municipal transfer station until January 1, 2011.  RSA 125-C:10-c.

House Bill 873, codified at RSA 362-F:2, II, mandated the use of renewable fuels in the production of energy, and included a list, with definitions, of acceptable types of renewable fuels, such as "Biomass fuels."  C & D debris was not included in the list of acceptable renewable fuels and was expressly excluded from the definition of "Biomass fuels."[2]

## Discussion

The plaintiffs claim that the above laws[3] ("C & D legislation"), which collectively ban the combustion of C & D debris, violate the Commerce Clause and the Privileges and Immunities Clause of the federal constitution.  The plaintiffs also contend that regulation of C & D debris is preempted by the Solid Waste Disposal Act, the Resource Conservation and Recovery Act ("RCRA"), and federal regulations.  The defendants seek dismissal of the plaintiffs' complaint in its entirety on the grounds that:  (1) the legislation does not violate the Commerce Clause, (2) the plaintiffs do not have standing to challenge the constitutionality of the legislation under

---

[2]"'Biomass fuels' means plant-derived fuel including clean and untreated wood such as brush, stumps, lumber ends and trimmings, wood pallets, bark, wood chips or pellets, shavings, sawdust and slash, agricultural crops, biogas, or liquid biofuels, but shall exclude any materials derived in whole or in part from construction and demolition debris."  RSA 362-F:2, II.

[3]Including the moratorium

the Privileges and Immunities Clause, (3) the legislation is not
preempted by federal law, (4) the plaintiffs failed to state claims
against Commissioner Burack or Attorney General Ayotte in their
individual or official capacities under 42 U.S.C. § 1983, and (5) the
plaintiffs' claims regarding the expired moratorium are barred by the
Eleventh Amendment.

I.   Commerce Clause

The plaintiffs contend that the C & D legislation violates the
Commerce Clause because it discriminates, in both purpose and effect,
against C & D fuels in favor of the New Hampshire virgin wood
industry, places an impermissible and unreasonable burden on commerce
"between New Hampshire and other states" by "precluding the market"
for C & D fuels, and places restrictions on citizens of other states
which are not placed on citizens of New Hampshire. *Plaintiffs'*
*Complaint ¶ 48*.  The defendants argue that the legislation does not
violate the Commerce Clause because: (1) it does not discriminate
between public versus private incinerators, (2) it is not
discriminatory in effect because the ban applies equally to in-state
and out-of-state C & D debris-producers, (3) it has a
nondiscriminatory purpose – to protect the environment and the health
of New Hampshire citizens, and (4) any burden on interstate commerce
imposed by the legislation is not excessive in relation to its public
health benefits.

The Commerce Clause provides, in pertinent part, that "[t]he Congress shall have power . . . [t]o regulate Commerce . . . among the several States."  U.S. Const. Art. I, § 8, cl. 3.  Through negative implication, the dormant commerce clause restricts the authority of states to regulate commerce, even in the absence of Congressional action.  Kassel v. Consolidated Freightways Corp., 450 U.S. 662, 689 (1981).  Under a dormant commerce clause analysis, the court asks "whether a challenged law discriminates against interstate commerce."  Dep't of Revenue v. Davis, 128 S. Ct. 1801, 1808 (U.S. 2008); see Wyoming v. Oklahoma, 502 U.S. 437, 454 (1992) ("This 'negative' aspect of the Commerce Clause prohibits economic protectionism – that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors.").

If the law "discriminates against interstate commerce on its face, in purpose, or in effect," Cherry Hill Vineyard, LLC v. Baldacci, 505 F.3d 28, 33 (1st Cir. 2007), it is "virtually per se invalid" unless "it advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives," Davis, 128 S. Ct. at 1808 (internal quotation marks and citations omitted).  If the legislation does not discriminate against interstate commerce, and "effectuate[s] a legitimate local public interest," Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970), it "will be upheld unless the burden imposed on interstate commerce is clearly excessive in relation to the putative local benefits," Davis,

7

128 S. Ct. at 1808 (quoting <u>Pike</u>, 397 U.S. at 142 (internal brackets omitted)).

**1.   Public Versus Private Incinerators**

The defendants cite <u>United Haulers Association v. Oneida–Herkimer Solid Waste Management Authority</u>, 127 S. Ct. 1786 (2007), and argue that the C & D legislation does not discriminate between municipal versus private incinerators.  <u>United Haulers</u>, 127 S. Ct. at 1797 (holding that law which benefits the state, "while treating all private [entities] exactly the same" does not constitute discrimination).  The plaintiffs, however, represent that they do not assert a claim of discrimination based upon disparate treatment between public and private incinerators.[4]  *See Plaintiffs' Objection to Defendants' Motion to Dismiss ("Plaintiffs' Obj."), at 2.*  The court, therefore, need not address this issue.

**2.   Discriminatory Effect[5]**

The plaintiffs claim that the ban impedes the importation of C & D fuels into New Hampshire resulting in increased business for the New Hampshire virgin wood industry.  Therefore, the plaintiffs

---

[4]To the extent the plaintiffs' complaint asserts such a claim, the defendants' motion to dismiss is granted as to this issue, given the plaintiffs' concession.

[5]The parties agree that the laws are not facially discriminatory against out-of-state interests. *See Plaintiffs' Obj., at 2.*  Rather, the plaintiffs claim only that the laws have a discriminatory effect and purpose.

conclude, the C & D legislation discriminates between out-of-state C & D fuel-producers in favor of the in-state virgin wood industry. The defendants argue that the ban is not discriminatory in effect because it applies equally to in-state and out-of-state C & D fuel-producers.  The defendants' argument, however, assumes that the proper comparison is between in-state C & D fuel-producers versus out-of-state C & D fuel-producers, while the plaintiffs assert discrimination which favors New Hampshire virgin wood producers.

The Supreme Court has suggested that when determining whether a law is discriminatory under the dormant commerce clause, a "comparison of substantially similar entities" is required.  Davis, 128 S.Ct. at 1811 (quoting United Haulers, 127 S. Ct. at 1795) (internal quotation marks omitted); General Motors Corporation v. Tracy, 519 U.S. 278, 299-300 (1997); cf. Cherry Hill Vineyard, 505 F.3d at 37 (citing Tracy, 519 U.S. at 299).  Entities are considered "substantially similar" if they generate similar products which compete within the same market.  See Tracy, 519 U.S. at 299-300.

The plaintiffs allege that wood derived from C & D debris and virgin wood compete for use as fuel by power plants and that both industries rely heavily upon this market for business.  The court must accept the allegation as true for purposes of the defendants' motion to dismiss.  C & D fuel-producers and the virgin wood industry are therefore similarly situated and may be compared to one another

to determine whether the plaintiffs' complaint sufficiently alleges that the C & D legislation is discriminatory.

Legislation is discriminatory in effect when it affords "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." Cherry Hill Vineyard, 505 F.3d at 33 (quoting Oregon Waste Sys. v. Dep't of Envtl. Quality, 511 U.S. 93, 99 (1994)).  The plaintiffs carry the burden of establishing discrimination.  Cherry Hill Vineyard, 505 F.3d at 33.

Accepting the plaintiffs' allegations as true, the plaintiffs have met their burden.  Their complaint alleges that as a result of the C & D legislation, the efforts of C & D fuel-producers to import their product into the state are "imped[ed]," *Plaintiffs' Complaint ¶ 2,* while the in-state virgin wood industry is directly benefitted. Although the plaintiffs offer no further detail regarding the extent of the alleged impediment, at this stage of the proceedings, the plaintiffs' allegations are sufficient to support their claim that the C & D legislation has a discriminatory effect.

3. **Discriminatory Purpose**

The plaintiffs allege that the discriminatory purposes of the C & D legislation are to protect the "failing New Hampshire virgin wood industry" at the expense of C & D fuel-producers and to prevent the state from becoming a "dumping ground" for C & D debris.  *Plaintiffs' Complaint ¶ 2.*  The defendants argue that the primary purpose of the

10

legislation was to protect the health and safety of New Hampshire
citizens, and the health of the environment.

The purpose of legislation is discerned by examining the
legislation as a whole, <u>Alliance of Automobile Manufacturers v.
Gwadosky</u>, 430 F.3d 30, 37 (1st Cir. 2005), and the plain meaning of
the legislation's words, "enlightened by their context and the
contemporaneous legislative history," <u>Edwards v. Aguillard</u>, 482 U.S.
578, 594 (1987).  The court may also consider circumstantial evidence
such as "statements of intent . . . from official legislative
sources." <u>Gwadosky</u>, 430 F.3d at 39.  The plaintiffs bear the burden
of establishing a discriminatory purpose.  <u>Id.</u> at 37.

The language effectuating the C & D debris combustion ban, while
located throughout several statutes, is found primarily under Title
X, Public Health, Chapter 125-C, Air Pollution Control.  <u>See</u> RSA 125-
C:10-c.  The purpose of Chapter 125-C is, in pertinent part:  "to
achieve and maintain a reasonable degree of purity of the air
resources of the state so as to promote the public health . . . ."
RSA 125-C:1.  The definition of C & D debris is also found under
Title X, at Chapter 149-M, Solid Waste Management.  <u>See</u> RSA 149-M:4,
IV-a.  The purpose of Chapter 149-M is, in pertinent part:  "to
protect human health, to preserve the natural environment, and to
conserve precious and dwindling natural resources through the proper
and integrated management of solid waste."  RSA 149-M:1.  Thus, on
the surface, the purpose of the legislation appears to be non-

11

discriminatory, and comports with the defendants' claims that the legislation is meant to protect public health and the environment.

The plaintiffs, however, allege that circumstantial evidence shows that a more sinister purpose hides behind the broad statements of purpose in the statutes.  They claim that a committee created in 2005 by the General Court to study C & D debris issued a report in 2006 which concluded that the wood component of C & D debris could be safely combusted to generate electricity, provided the proper emission controls were utilized.  The plaintiffs further allege that the report cautioned that when determining whether the state could use C & D debris as fuel, it should consider "the risk of undermining the current virgin wood industry."  *Plaintiffs' Complaint ¶ 44.*  The plaintiffs also allege that Commissioner Burack stated at a meeting of the DES C & D task force that the reason for the C & D debris combustion ban was to promote the use of New Hampshire forest products.  Accepting these allegations as true, as the court must, the plaintiffs have sufficiently alleged that the C & D legislation has a discriminatory purpose to avoid dismissal.

**4.   Excessive Burden**

Given that the plaintiffs have sufficiently alleged that the C & D legislation has both a discriminatory effect and discriminatory purpose, the court need not address the defendants' argument that the legislation is "clearly not excessive" in relation to its purported purpose to protect public health.

II.  Privileges and Immunities Clause

Count Two of the plaintiffs' complaint alleges that the C & D legislation violates the Privileges and Immunities Clause because it imposes restrictions on out-of-state citizens without imposing restrictions on in-state citizens, and bans the combustion of C & D debris derived out-of-state but permits C & D debris combustion by in-state entities.  The defendants argue that the plaintiffs are not entitled to the protection of the Privileges and Immunities Clause because it does not apply to corporations.  The plaintiffs counter that CMRAIEF has standing to sue because it represents individuals.

The Privileges and Immunities Clause provides that "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."  U.S. Const. art. IV, § 2, cl. 1. It is well-settled that corporations are not citizens within the meaning of the Privileges and Immunities Clause.  Western & Southern Life Ins. Co. v. State Bd. of Equalization, 451 U.S. 648, 656 (1981). Neither the Supreme Court nor the First Circuit have recognized any exceptions to this principle.

The plaintiffs cite Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333 (1977) for the proposition that if a corporation is made up, at least in part, of individuals who would have standing to sue, the corporation has standing to sue on their behalf.  Hunt, however, addressed the prerequisites of associational standing under Article III; it did not address the "citizen"

13

requirement of the Privileges and Immunities Clause and is therefore inapplicable to this case.  See 432 U.S. at 342.  NER and CMRAIEF are both corporations and therefore cannot invoke the protection of the Privileges and Immunities Clause.  The defendants' motion to dismiss is therefore granted as to the plaintiffs' Privileges and Immunities Clause claim.

III. Preemption

Count Three of the plaintiffs' complaint claims that regulation of C & D debris is preempted by the Solid Waste Disposal Act, RCRA (which amended the Solid Waste Disposal Act), and federal regulations.  More specifically, the plaintiffs contend that the principle of conflict preemption precludes New Hampshire's regulation of C & D debris.

Under the principle of conflict preemption, state regulations are preempted if they actually conflict with federal regulations, making "compliance with both state and federal statutes and regulations . . . a physical impossibility, or when compliance with the state statute would frustrate the purposes of the federal scheme." SPGGC, LLC v. Ayotte, 488 F.3d 525, 531 (1st Cir. 2007); see also Hines v. Davidowitz, 312 U.S. 52, 67 (1941).  General expressions of policy in federal law, however, are unlikely to support conflict preemption.  Fitzgerald v. Harris, 549 F.3d 46, 53 (1st Cir. 2008).

The plaintiffs' complaint cites to 42 U.S.C. §§ 8801 and 8804 and alleges that the "promotion and control of biomass – of which C & D fuels are one" is a national objective whose oversight lies with federal agencies. *Plaintiffs' Complaint ¶¶ 31-32.* The complaint references the Solid Waste Disposal Act, which the plaintiffs claim limited the delegation of regulatory authority regarding waste to the states, and required that any state regulation adhere to the broader federal policy. The plaintiffs also cite RCRA, briefly describing its purpose and provisions. Beyond these terse references to general federal policies, the plaintiffs fail to allege how the C & D legislation conflicts with federal law. The plaintiffs have failed, therefore, to sufficiently allege a preemption claim.

IV. <u>Section 1983 Claims</u>

The plaintiffs' complaint alleges § 1983 claims against Commissioner Burack and Attorney General Ayotte. The defendants argue that (1) CMRAIEF does not have standing to bring a claim under § 1983, (2) the complaint fails to make specific allegations against Commissioner Burack and Attorney General Ayotte in their individual capacities, (3) the complaint fails to state a claim against Commissioner Burack and Attorney General Ayotte in their official capacities, and (4) the plaintiffs' claims regarding the moratorium are barred by sovereign immunity.

**1.    Standing**

The defendants argue that CMRAIEF does not have standing to
bring a § 1983 claim on behalf of its members.  CMRAIEF alleges that
it represents "individuals and companies involved in the reuse of
construction and demolition related materials," *Plaintiffs' Complaint*
*¶ 6*, and argues that it meets the requirements for associational
standing.

An association may sue "on behalf of its members where [1] the
members would have standing to sue themselves, [2] the interests are
germane to the association's purpose, and [3] 'neither the claim
asserted nor the relief requested requires the participation of
individual members in the lawsuit.'"[6] <u>R.I. Bhd. of Corr. Officers v.</u>
<u>Rhode Island</u>, 357 F.3d 42, 48 (1st Cir. 2004) (quoting <u>Hunt</u>, 432 U.S.
at 343).  An association's demand for damages ordinarily requires the
participation of its members, thereby depriving it of associational
standing based upon the third factor.  <u>Corr. Officers</u>, 357 F.3d at
48.  Where an association also seeks declarative or injunctive relief
which, if granted, would benefit its members, however, it satisfies
the third factor and may maintain its standing.  <u>Id.</u>

In addition to damages, the plaintiffs seek declaratory and
injunctive relief.  A declaration that the C & D legislation is

_____

[6]The defendants argue only that the plaintiffs' cannot
satisfy the third factor.

16

unconstitutional, or an injunction prohibiting its enforcement, would benefit the members of CMRAIEF without their participation.  CMRAIEF, therefore, has standing to maintain its suit under § 1983 on behalf of its members.

**2.   Individual Capacities**

The defendants argue that the plaintiffs' complaint fails to make any specific allegations against Commissioner Burack or Attorney General Ayotte in their individual capacities and that the plaintiffs' claim for damages under § 1983 should be dismissed.  The plaintiffs object, arguing that the complaint alleges that Burack and Ayotte are liable as supervisors.

Generally, a plaintiff cannot maintain a claim against a state officer individually under § 1983 absent some allegation that he was personally involved in the alleged deprivation of rights.  See Kentucky v. Graham, 473 U.S. 159, 166 (1985).  A supervisor, however, may be subject to liability "if he formulates a policy or engages in a practice that leads to a civil rights violation" committed by his subordinate.  Camilo–Robles v. Hoyos, 151 F.3d 1, 7 (1st Cir. 1998).  In such a case, a supervisor is liable where "(1) [his] subordinate's actions violated a clearly established constitutional right, and (2) it was clearly established that [the] supervisor would be liable for constitutional violations perpetrated by his subordinates in that context."  Id. at 6; see also Bisbal–Ramos v. City of Mayaguez, 467 F.3d 16, 24 (1st Cir. 2006); Velez–Rivera v. Agosto–Alicea, 437 F.3d

17

145, 156 (1st Cir. 2006) ("In § 1983 cases, 'supervisors are not automatically liable for the misconduct of those under their command. A plaintiff must show an affirmative link between the subordinate officer and the supervisor, whether through direct participation or through conduct that amounts to condonation or tacit authorization.'") (quoting <u>Carmona v. Toledo</u>, 215 F.3d 124, 132 (1st Cir. 2000)).

The plaintiffs fail to allege any conduct by Commissioner Burack or Attorney General Ayotte that establishes (1) that either was personally involved in the alleged deprivation of rights, or (2) supervisory liability.  The only conduct alleged in the complaint concerns Commissioner Burack's statement to the DES C & D task force that the purpose of the C & D legislation was to promote use of New Hampshire virgin wood.  The plaintiffs fail, however, to explain how this statement <u>caused</u> a deprivation of their rights.  The plaintiffs' claim for damages under § 1983 against Commissioner Burack and Attorney General Ayotte in their individual capacities is therefore dismissed.

3.   **Official Capacities**

The defendants also argue that the plaintiffs have failed to sufficiently allege facts to support their § 1983 claim against

Commissioner Burack and Attorney General Ayotte in their official capacities.[7]

The plaintiffs are suing the defendants in their official capacities as Commissioner of the DES and Attorney General for the State of New Hampshire.  The complaint alleges that the defendants are state public officials responsible for enforcing the unconstitutional statutes.  They seek a declaratory judgment that the C & D legislation violates the Commerce Clause and an injunction against the enforcement of the legislation.  The plaintiffs' allegations sufficiently state a claim under § 1983 against the defendants in their official capacities.[8]

**4.   Sovereign Immunity**

The defendants argue that the plaintiffs' claim against them in their official capacities challenging the moratorium, which expired in December of 2007, is barred by sovereign immunity.

"Unless a State has waived its Eleventh Amendment immunity or Congress has overridden it, . . . a State cannot be sued directly in

---

[7]The court notes that the plaintiffs, by their own admission, *Plaintiffs' Obj., at 7,* do not seek (nor could they) damages against the defendants in their official capacities. <u>See Arizonans for Official English v. Arizona</u>, 520 U.S. 43, 69 n.24 (1997) ("State officers in their official capacities, like States themselves, are not amenable to suit for damages under § 1983."); <u>Johnson v. Rodriguez</u>, 943 F.2d 104, 108 (1st Cir. 1991).

[8]The defendants do not dispute that a claim for violation of the Commerce Clause is actionable under § 1983.

its own name regardless of the relief sought." Graham, 473 U.S. at
167, n. 14. "Thus, implementation of state policy . . . may be
reached in federal court only because official-capacity actions for
prospective relief are not treated as actions against the State."
Id. Accordingly, "the Eleventh Amendment does not bar a citizen from
seeking injunctive or declaratory relief against a state official 'to
conform his future conduct to the requirements of federal law.'"
Brunken v. Lance, 807 F.2d 1325, 1329 (7th Cir. 1986) (quoting Quern
v. Jordan, 440 U.S. 332, 337 (1979) (internal brackets omitted);
Edelman v. Jordan, 415 U.S. 651, 677 (1974) ("[In] a § 1983 action, .
. . a federal court's remedial power, consistent with the Eleventh
Amendment, is necessarily limited to prospective injunctive relief,
and may not include a retroactive award which requires the payment of
funds from the state treasury.") (internal citation omitted). A
plaintiff seeking declaratory relief under this framework, however,
must allege a "continuing violation of federal law." Green v.
Mansour, 474 U.S. 64, 68 (1985) ("[While] [r]emedies designed to end
a continuing violation of federal law are necessary to vindicate the
federal interest in assuring the supremacy of that law[,] . . .
compensatory or deterrence interests are insufficient to overcome the
dictates of the Eleventh Amendment.") (internal citations omitted).

     Given the court's dismissal of the plaintiffs' § 1983 claim for
damages, the only remaining relief which the plaintiffs seek with
regard to the moratorium is a declaratory judgment that it was

unconstitutional because it violated the Commerce Clause.  The
moratorium, however, expired in December of 2007.  The plaintiffs do
not allege that the moratorium presents an ongoing violation of the
Constitution.  Absent such a claim, declaratory relief is barred by
the Eleventh Amendment.  The plaintiffs' claims against the
defendants concerning the moratorium are therefore dismissed.


                              Conclusion

     For the foregoing reasons, and to the extent described above,
the defendants' motion to dismiss (document no. 7) is granted in part
and denied in part.  The defendants' motion is granted to the extent
it seeks dismissal of the plaintiffs' claims against the defendants
in their individual capacities under § 1983, granted as to Counts II
and III of the plaintiffs' complaint (document no. 1), and granted in
part as to Count I, to the extent it seeks dismissal of the
plaintiffs' claims regarding the moratorium.  The remainder of the
defendants' motion is denied without prejudice.


     SO ORDERED.

                              _____
                              Joseph A. DiClerico, Jr.
                              United States District Judge

January 27, 2009

cc:  Mary E. Maloney, Esquire
     Frank P. Spinella, Jr., Esquire